Erik J. Halverson (SBN 333492)
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8238
Fax: (415) 882-8220
erik.halverson@klgates.com

Jason A. Engel (*pro hac vice*)
Devon C. Beane (*pro hac vice*)
Rebekah Hill (*pro hac vice*)
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 372-1121
Fax: (312) 827-8000
jason.engel@klgates.com
devon.beane@klgates.com
rebekah.hill@klgates.com

*Attorneys for Plaintiff LS Cable & System Ltd.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LS CABLE & SYSTEM LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 3:24-cv-09194-JD <br><br> **PLAINTIFF LS CABLE & SYSTEM LTD.'S OPENING CLAIM CONSTRUCTION BRIEF** |

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................................1

      A.      The '568 Patent ....................................................................................................1

      B.      The Parties' Claim Construction Positions ...........................................................2

II.     LEGAL FRAMEWORK.....................................................................................................3

III.    LEVEL OF ORDINARY SKILL IN THE ART ................................................................5

IV.     ARGUMENT ......................................................................................................................5

      A.      "at both ends" (Claims 1, 7, and 48) ...................................................................5

      B.      "a microprocessor" (Claims 1 and 48) .................................................................8

      C.      "a microprocessor" (Claim 7) .............................................................................10

V.      CONCLUSION .................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
 725 F.3d 1315 (Fed. Cir. 2013) .................................................................................................. 4

*Acumed LLC v. Stryker Corp.*,
 483 F.3d 800 (Fed. Cir. 2007) .................................................................................................... 5

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
 512 F.3d 1338 (Fed. Cir. 2008) .................................................................................................. 8

*Comark Commc'ns, Inc. v. Harris Corp.*,
 156 F.3d 1182 (Fed. Cir. 1998) .................................................................................................. 4

*Cont'l Circuits LLC v. Intel Corp.*,
 915 F.3d 788 (Fed. Cir. 2019) .................................................................................................... 4

*Convolve, Inc v. Compaq Comput. Corp.*,
 812 F.3d 1313 (Fed. Cir. 2016) .................................................................................................. 8

*Markman v. Westview Instruments, Inc.*,
 52 F.3d 967 (Fed. Cir. 1995) ...................................................................................................... 3

*Merck & Co. v. Teva Pharms. USA, Inc.*,
 395 F.3d 1364 (Fed. Cir. 2005) .................................................................................................. 8

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) ......................................................................................... 3, 4, 7

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
 400 F.3d 901 (Fed. Cir. 2005) .................................................................................................... 5

*PPG Indus. v. Guardian Indus.*,
 156 F.3d 1351 (Fed. Cir. 1998) .................................................................................................. 5

*Salazar v. AT&T Mobility LLC*,
 64 F.4th 1311 (Fed. Cir. 2023) ................................................................................................... 9

*Salazar v. AT&T Mobility LLC*,
 Civ. A. No. 2:20-cv-00004-JRG , 2020 WL 5608640 (E.D. Tex. Sept. 8, 2020) ...................... 9

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
 820 F.3d 419 (Fed. Cir. 2016) .................................................................................................... 8

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
 299 F.3d 1313 (Fed. Cir. 2002) .................................................................................................. 4

*Thorner v. Sony Comput. Ent. Am. LLC*,
 669 F.3d 1362 (Fed. Cir. 2012) .................................................................................................. 4

*U.S. Surgical Corp. v. Ethicon, Inc.*,
 103 F.3d 1554 (Fed. Cir. 1997) .................................................................................................. 3

*Voice Tech Corp. v. Unified Pats., LLC*,
   110 F.4th 1331 (Fed. Cir. 2024) .................................................................................... 7

## I.    INTRODUCTION

Plaintiff LS Cable & System Ltd. ("LS Cable") brought this case against Apple Inc. ("Apple") seeking to resolve an ongoing dispute between the parties that began over six years ago when LS Cable first notified Apple of its infringement of U.S. Patent No. 8,013,568 (the "'568 Patent" or the "Asserted Patent"). The asserted claims of the '568 Patent presently include Claims 1, 3, 7–9, 11–12, 30–34, 48–50, and 52–53. Relevant to the instant brief, Apple has identified two terms it believes are necessary to construe. Conversely, LS Cable contends that the terms are facially clear and Apple's non-infringement driven constructions need not be adopted.

### A.    The '568 Patent

The '568 Patent relates to a wireless charging system for a mobile communication terminal utilizing electromagnetic wave generation and intercepting technology, and is "capable of solving an overvoltage state by means of a wireless feedback control." Ex. A ('568 Patent) at Abstract. This charging may be accomplished by way of a charger body that receives power from a power supply, converts it to wireless form for transmission, and then transmits that power to a receiver, as well as a receiver that can receive a wireless transmission of power and converts it back to AC current to provide a charge to a connected battery. Ex. A, 7:13-36.

The '568 Patent identifies certain problems with conventional charging systems, explaining that the conventional wired charging systems include "exposed" contact and charging terminals resulting in faster corrosion and contamination. Ex. A, 1:38-49. The '568 Patent sought to address these problems by providing a contact-less battery charging system in which a charger wirelessly transmits power to a battery, and the battery includes circuitry to regulate and monitor charging for safe and efficient operation. Specifically, the battery incorporates voltage detectors and a microprocessor to monitor voltages along the charging path and, through a microprocessor and wireless transmitting unit, communicate adjustment signals to the charger to prevent overvoltage. Ex. A, 7:42-61. This arrangement allows the battery to receive safe, regulated charging without requiring physical coupling between the charger and battery.

While the '568 Patent describes its inventions in various terms, in all cases uses ordinary English-language words to explain how the inventors designed a "contact-less chargeable battery

and charging device capable of preventing any damage of an internal battery circuit together with solving a restriction for relative positions between the chargeable battery and the charging device when charging the battery in a contact-less charging method." Ex. A, 3:29-43. The claim terms addressed below clearly and unambiguously recite aspects of the inventions claimed in the '568 Patent.

During prosecution and throughout the specification itself, there is no evidence that the applicant ever intended to deviate from the ordinary and customary meaning of the terms used in the claims. There is no evidence of any efforts to define any term to ascribe a meaning different than the ordinary and customary meaning. There is no evidence of any efforts to disclaim any aspect of any claim term. For the reasons explained, these terms should be accorded their plain and ordinary meaning in the remainder of this case.

### B. The Parties' Claim Construction Positions

Apple proposes specific constructions for two disputed claim terms, totaling three disputed constructions. LS Cable disagrees and contends that both disputed claim terms are facially clear and should be accorded their plain and ordinary meaning. Apple has not, and cannot, identify any reason to deviate from the ordinary and customary meaning of these two terms, which is the default approach to claim interpretation. Therefore, Apple's proposed constructions should not be adopted.

During the Parties' preliminary claim construction exchanges pursuant to Patent Local Rules 4-1 and 4-2, LS Cable and Apple agree that–except for the two disputed claim terms identified below–all claim elements of the '568 Patent should be construed in accordance with their plain and ordinary meeting. The Parties further mutually agreed to not present expert testimony or rely on expert reports at the claim construction phase.

Following a meet-and-confer regarding the Parties' respective claim construction positions, the Parties were unable to reach an agreement as to the two disputed terms. The table below lists the terms in dispute and summarizes each party's respective construction, which form the basis for the briefing.

| DISPUTED CONSTRUCTIONS | | |
|---|---|---|
| **Claim Term (Asserted Independent Claims)** | **LS Cable's Proposed Construction** | **Apple's Proposed Construction** |
| "at both ends" (Claims 1, 7, 48) | Plain and ordinary meaning | "at the front end and at the rear end" |
| "a microprocessor" (Claims 1 and 48) | Plain and ordinary meaning | "one microprocessor that performs both the monitoring of both the detected voltages and also the transmitting a monitoring result" |
| "a microprocessor" (Claim 7) | Plain and ordinary meaning | "one microprocessor that performs both the monitoring of both voltages and also the wirelessly transmitting a monitoring result" |

## II.    LEGAL FRAMEWORK

"[T]he court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995).   However, claim construction "is not an obligatory exercise in redundancy."   *U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997).   Instead, it "is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement."   *Id.*

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).   Claim terms are generally given their ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."   *Id.* at 1313.

"There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."   *Thorner v. Sony Comput. Ent. Am. LLC*, 669

F.3d 1362, 1365 (Fed. Cir. 2012). For the first exception, if the patentee is acting as his own lexicographer, the patentee must "'clearly set forth a definition of the disputed claim term,'" and "'clearly express an intent' to redefine the term" in either the specification or during prosecution. *Id.* Absent a clear articulation in the specification or prosecution history, this exception cannot apply.

For the second exception, the patentee's statements disavowing the full scope of a claim must represent "'a clear disavowal of claim scope.'" *Id.* at 1366. A statement is not "a clear disavowal of claim scope," when "an applicant's statements are amenable to multiple reasonable interpretations . . ." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

In addition to the claims themselves, the patent's specification and prosecution history may help in determining the meaning of claim terms; however, improper use of the specification and the prosecution history may lead to misconstruing the meaning of claim terms. "Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read in the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). Thus, "the claims must be read in view of the specification, but limitations from the specification are not to be read into the claims." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002).

Additionally, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

*Thorner* has been guiding Federal Circuit precedent since its adoption. *See Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648 (2019). Moreover, the mere fact that a dispute exists between the parties does not require the adoption of Defendants' limiting constructions, or any explicit construction for that matter. *Id.* Even where a dispute exists, the proper construction can, and often is, "plain and ordinary meaning."

Finally, "a sound claim construction need not always purge every shred of ambiguity."

*Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).  Indeed, "after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact."  *PPG Indus. v. Guardian Indus.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998); *see also Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 908 (Fed. Cir. 2005) ("The need to make a difficult factual determination does not allow the court to surrender material that the patentee clearly and rightfully claimed.").

## III.    LEVEL OF ORDINARY SKILL IN THE ART

Apple describes the person of ordinary skill in the art ("POSA") as having had:

> A Bachelor's degree and a Master's degree in Electrical Engineering, Computer Engineering, Physics, or a related field, as well as one to two years of academic or industry experience in power electronics or battery charging or comparable industry experience.

Exhibit B (*Apple Inc. v. LS Cable & System Ltd.*, IPR2025-01141, Paper 2) at 2-3.  LS Cable does not dispute Apple's definition of the POSA for the purposes of this exercise, and therefore believes there is no meaningful dispute as to the governing level of ordinary skill in the art that needs to be resolved at this time.

## IV.    ARGUMENT

### A. "at both ends" (Claims 1, 7, and 48)

Apple alleges the term "at both ends" should be construed as "at the front end and at the rear end," seemingly referring solely to the literal and physical input and output terminals located on opposite sides of the constant voltage/constant current supplier.  In other words, Apple appears to advance an interpretation that suggests detecting voltages at the ends of a box, i.e., at physical locations on opposite sides of the constant voltage/constant current supplier.  In doing so, Apple ignores the plain and ordinary meaning of the term as understood by a POSA, who would read the term in the context of the claimed contact-less charging system.

The claim language itself, when considered with the specification and other claims, makes clear that "at both ends" refers to functional measurement points along the charging path at which voltages are monitored to control charging and prevent overvoltage.  Specifically, one end is a

functional point that occurs at some point following the secondary coil (i.e., receiver coil), where incoming voltage is measured before regulation, upstream of the constant voltage/constant current supply. The second end is a second functional point that occurs downstream of the constant voltage/constant current supplier. Monitoring these points allows the charging system to detect overvoltage conditions and adjust charging in real time, which is precisely the function described throughout the specification and claimed in independent Claims 1, 7, and 48. For example, the '568 Patent's specification describes detecting voltages "at both ends" as:

> Preferably, the operation of monitoring voltages at both ends of the constant voltage/constant current supplier 290 is conducted in a way of measuring *a front end voltage $V_{pp}$ and a rear end voltage $V_{ch}$* of the constant voltage/constant current supplier 290 and then checks whether a difference between them exceeds a criterion value.

Ex. A, 7:50-55.

> The voltage comparison result is a difference value of the first and second voltages, or a state of voltages at both ends, which indicates whether an overvoltage is applied. In the later case, the voltage comparator 380 compares a reference voltage difference for an overvoltage state with a difference between the first and second voltages.

*Id.* at 8:42-47; *see also id.* at Figure 5 (reproduced below).



*Id.* at Figure 5.

> The voltage state is voltages at both ends of the constant voltage/constant current supplier 290, *or a difference of the voltages*. This voltage state may be input from the voltage comparator 380, or obtained by operating measured voltages $V_{pp}$, $V_{ch}$ input from the first and second voltage detectors 340, 360.

Ex. A, 12:4-9.

However, nothing in the specification requires that this otherwise clear claim language needs to be confined to only "at the front end and at the rear end," as Apple contends.

Rather, these disclosures confirm that "at both ends" refers to the functional start and end of the regulated charging path and includes measurements along that path (so long as the measurements are taken on both sides of the constant voltage/constant current supplier component) and not to the physical terminals of the constant voltage/constant current supplier component.

This interpretation aligns with the specification's emphasis on monitoring the voltage drop across the charging path to detect and control for conditions so that the voltage across the constant voltage/constant current supplier may be controlled to a suitable level, supporting a plain and ordinary meaning construction consistent with the disclosed embodiments and system operation. In other words, "at both ends" refers to points along the charging path rather than confined to the physical terminals of the constant voltage/constant current supplier component.

Additionally, certain dependent claims in the '568 Patent aid in determining the meaning of "at both ends." *See Phillips*, 415 F.3d at 1314-15 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." (internal citations omitted)). For example, while independent Claims 1 and 7 recite, in part, "monitoring voltages at both ends of the constant voltage/constant current supplier," dependent Claims 27 and 32, which depend from Claims 1 and 7, respectively, recite: "wherein the constant voltage/constant current supplier **has a front end and a rear end**." The additional limitation, "a front end and a rear end," in the dependent claims "gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1315.

Additionally, Apple's proposed construction "would improperly impute other limitations into the claim term, rendering [the dependent claim] limitations superfluous." *Voice Tech Corp. v. Unified Pats., LLC*, 110 F.4th 1331, 1343 (Fed. Cir. 2024) (rejecting proposed construction that "incorporate[s] the steps recited in claim limitation [1.3] (deciding and selecting) directly into claim

limitation [1.1] (receiving), thereby leaving claim limitation [1.3] no work to do") (citing *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429 (Fed. Cir. 2016) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored.")); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

A POSA would understand Apple's proposed construction–limiting where voltages are detected to the physical front end and physical rear end of the constant voltage/constant current supplier–ignores the various places where voltage drops critical to feedback and charging control are measured, and therefore would not accurately reflect the scope of the claimed invention.

As Apple can identify no instances of lexicography or disavowal, and as Apple's own proposed construction is facially irreconcilable with the dependent claims of the '568 Patent, Apple's proposed construction should be rejected and the plain and ordinary meaning of the term should govern.

**B.    "a microprocessor" (Claims 1 and 48)**

Apple alleges the term "a microprocessor" should be construed as "one microprocessor that performs both the monitoring of both the detected voltages and also the transmitting a monitoring result."  Apple's proposed construction improperly narrows the scope of the claim by requiring one, and only one, microprocessor, which is neither compelled by the claim language nor required by the specification.  The Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008).  The claims at issue in this case are comprising claims.

"The exceptions to this rule are ***extremely limited***: a patentee must evince a clear intent to limit 'a' or 'an' to 'one.'" *Convolve, Inc v. Compaq Comput. Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016) (emphasis added).  The '568 Patent and its prosecution history evidence no such intent.

Here, the claims employ open-ended language regarding the overvoltage monitoring unit– "includes" and "a microprocessor"–that denotes non-exclusive listing of components within the

overvoltage monitoring unit. This claim language is unlike the disputed terms in, for example, *Salazar v. AT&T Mobility LLC*, where the Federal Circuit held that "the district court properly interpreted 'a microprocessor for generating …, said microprocessor creating …, a plurality of parameter sets retrieved by said microprocessor …, said microprocessor generating …' to mean 'one or more microprocessors, at least one of which is configured to perform the generating, creating, retrieving, and generating functions.'" 64 F.4th 1311, 1317 (Fed. Cir. 2023). The '568 Patent claims do not subsequently recite additional limitations adding requirements that must be met by "said microprocessor," nor do the claims "repeatedly introduce[] ['a microprocessor'] using 'said microprocessor.'" *Salazar v. AT&T Mobility LLC*, Civ. A. No. 2:20-cv-00004-JRG , 2020 WL 5608640, at *19 (E.D. Tex. Sept. 8, 2020). Rather, the "claim-recited characteristics are [] just a simple listing of functions to be performed by 'a microprocessor.'" *Id.* ("[T]he repeated use of "said microprocessor" to enumerate the functional and relational characteristics of "a microprocessor" suggests that the same microprocessor that is "coupled to" various structural elements is the one that is configured to perform the various recited microprocessor functions. In other words, one microprocessor must have all the recited characteristics.").

Further, the specification does not support Apple's proposed construction that the microprocessor itself directly "performs" the wireless transmission of the monitoring result, whereby Apple's proposed construction appears to seek a construction requiring a microprocessor itself be capable of wireless transmission. Instead, the microprocessor's role involves "output[ting] an adjustment request signal of the charging power to the wireless transmitting unit 320," and the "wireless transmitting unit 320 receives the adjustment request signal of the charging power output from the microprocessor 310, and then modulates the adjustment request signal and wirelessly transmits it to the antenna 220 of the wireless receiving unit 230 provided to the charging device C through the antenna 330." Ex. A, 7:45-60. Accordingly, while the microprocessor indirectly facilitates the wireless transmission of a monitoring result via the wireless transmitting unit 320, the microprocessor does not itself "perform … the transmitting a monitoring result to the external contact-less charging device by means of wireless communication" as Apple's proposed construction requires. The claims of the '568 Patent encompass the described multi-processor

system (e.g., one microprocessor for receiving and a second microprocessor for transmitting), and the claim's recitation of "a" microprocessor simply means one or more microprocessors. Apple's proposed construction would exclude that embodiment.

A POSA would understand that the microprocessor coordinates or controls the transmitting a monitoring result to the external charging device, but the physical act of transmission by wireless communication is performed by a separate component: the wireless transmitting unit. Therefore, the claim should not be construed to require the same microprocessor to "perform" both monitoring and transmission (wireless or otherwise).

As Apple can identify no instances of lexicography or disavowal, and as Apple's own proposed construction seeks to introduce an impossibility, that is itself inconsistent with the specification, Apple's proposed construction should be rejected and the plain and ordinary meaning of the term should govern.

### C.    "a microprocessor" (Claim 7)

Apple proposes a slight variation to its construction of "a microprocessor" for Claim 7 relative its proposal for Claims 1 and 48, but this construction fares no better. Apple alleges that Claim 7's recitation of the term "a microprocessor" should be construed as "one microprocessor that performs both the monitoring of both voltages and also the wirelessly transmitting a monitoring result."

For the same reasons discussed above with respect to Claims 1 and 48, Apple's proposed construction for this term is improper, and this claim term should be given its plain and ordinary meaning.

### V.    CONCLUSION

LS Cable respectfully asks this Court to reject Apple's insupportably narrow constructions for the terms addressed above and instead adopt LS Cable's proposal that the terms need not be construed and that the plain and ordinary meaning of the terms be adopted.

Dated: September 11, 2025

Respectfully submitted,

*/s/ Erik J. Halverson*
Erik J. Halverson (SBN 333492)
erik.halverson@klgates.com
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Fax: (415) 882-8220
erik.halverson@klgates.com

Jason A. Engel (*pro hac vice*)
Devon C. Beane (*pro hac vice*)
Rebekah Hill (*pro hac vice*)
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 372-1121
Fax: (312) 827-8000
jason.engel@klgates.com
devon.beane@klgates.com
rebekah.hill@klgates.com

*Attorneys for Plaintiff LS Cable & System Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the county of Cook, State of Illinois.  I am over the age of 18 and not a party to the within action; my business address is: K&L GATES LLP, 70 W. Madison Street, Suite 3300, Chicago, IL 60602.

On September 11, 2025, I caused to be served the document(s) described as:

- **PLAINTIFF LS CABLE & SYSTEM LTD.'S OPENING CLAIM CONSTRUCTION BRIEF**

on the interested parties in this action by delivering a true copy thereof as follows:

| | |
|---|---|
| Richard S.J. Hung<br>rhung@mofo.com<br>MoFo-Apple_LSC@mofo.com<br>Meredith L. Angueira<br>MAngueira@mofo.com<br>Shaelyn K. Dawson<br>ShaelynDawson@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>(415) 268-7000 | Aaron D. Bray<br>abray@mofo.com<br>Stephen Liu<br>sliu@mofo.com<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>(650) 813-5600<br><br>Ryan J. Malloy<br>rmalloy@mofo.com<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard, Suite 6000<br>Los Angeles, CA 90017<br>(213) 892-5200 |
| *Attorneys for Defendant*<br>APPLE INC. | |

☑ **BY CM/ECF**: by transmitting a true copy of the foregoing document(s) to the Clerk of Court using the Court's CM/ECF system.

☑ **BY ELECTRONIC SERVICE**: by transmitting a true copy of the foregoing document(s) to the e-mail addresses set forth above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 11, 2025, at Chicago, Illinois.

*/s/ Rebekah Hill*
Rebekah Hill